MEYER W. STEIN, PLAINTIFF-APPELLANT, v. PEGGY
SHAW, DEFENDANT-RESPONDENT.

Argued February 12, 1951—Decided March 19, 1951.

*Mr. Louis C. Friedman* argued the cause for the appellant (*Messrs. Ward & Friedman,* attorneys).

*Mr. Oliver T. Somerville* argued the cause for the respondent (*Messrs. Kipp, Ashen & Somerville,* attorneys).

The opinion of the court was delivered by
VANDERBILT, C. J. The plaintiff, an attorney at law, entered into a verbal agreement with the defendant to institute a suit in her behalf for the recovery of damages for personal injuries allegedly sustained by another's negligence. Under this agreement the plaintiff was to receive one-third of any recovery. ·He instituted suit and opened negotiations for a settlement, both of which were pending at the time he was disbarred from the practice of law for reasons not connected in anywise with the prosecution of the defendant's suit. After the plaintiff's disbarment other attorneys were substituted for him and the defendant's suit was subsequently settled for $4,950. The defendant refused to pay the plaintiff and he then commenced this action against her, seeking in the first count to recover $1,028 as the reasonable value of his services and disbursements, and in the second count to recover on his

contingent fee contract one-third of the amount of the settlement. On the defendant's motion the trial court dismissed the complaint for failure to state a cause of action. From this judgment the plaintiff appealed to the Appellate Division of the Superior Court and we have certified the appeal here on our own motion.

██ ██ We are of the opinion that the plaintiff should be permitted to recover in *quasi* contract for the reasonable value of his services rendered and disbursements made prior to his disbarment, for otherwise the defendant will be unjustly enriched at the expense of the plaintiff. To deprive an attorney of his claim for any and all compensation for services rendered prior to his disbarment when the services are not involved in the unprofessional conduct occasioning disciplinary action, would be inequitable. There is no sound reason in law or morals for permitting the defendant to use the plaintiff's disbarment as an escape from paying him for services rendered or necessary disbursements made by him in her behalf. Article VI, Section II, paragraph 3 of the Constitution imposes on this court the duty to discipline members of the bar for the protection of society, the legal profession and the courts in preserving the due administration of justice in the State, but its exercise does not affect either civil or criminal actions by or against the attorney disciplined by the court.

If the rule were otherwise, the effect of disciplinary action would inevitably be retroactive, which is not the intent or purpose in imposing discipline. The court, moreover, would never know the extent of such retroactive punishment without an undesirable inquiry as to the extent of the attorney's pending business and the monetary value thereof. It is unthinkable that punishment should be inflicted by a court so unintelligently. These are matters, however, which should not be considered by the committees on ethics and grievances appointed by us in the several counties to aid us by investigating complaints against members of the bar and by making presentments to us where the situation requires, nor should such matters be before us in imposing discipline. Our duty of safeguarding the integrity of the bar and of keeping the fountain

of justice unpolluted is sufficiently difficult and delicate as it is without further complicating it with any such extraneous matters which should in all fairness be considered in imposing discipline, if the attorney's right to bring suit for services rendered is to be impaired by us. Disbarment is not a form of outlawry. To bring economic considerations into disciplinary proceedings would not only needlessly complicate them, but would in many instances serve to defeat the essential purpose thereof.

We are aware of *Davenport v. Waggoner,* 207 *N. W.* 972 *(S. Dak.* 1926·), and *In re Woodnorlh,* 85 *Fed.*·2d 50 *(2nd Cir.* 1936), which hold to the contrary, but we cannot subscribe to the theory on which they are premised, that withdrawal from a suit by reason of disbarment constitutes a voluntary abandonment of the contract without just cause. Such is actually not the fact in those cases. The contract was not voluntarily abandoned, it was automatically terminated by operation of law, when the order of the court made further performance impossible. While the plaintiff was disbarred because of his own wrongful acts, so far as this defendant is concerned he is guiltless. It is pure fiction to say that he has intentionally and without cause abandoned his contract with her. While the analogy is not complete, the effect on the client of an attorney's disbarment is the same as that in the case of *Justice v. Lairy,* 49 *N. E.* 459 *(Ind. App.* 1898), where an attorney accepted appointment to the bench and was thereby prohibited from the further practice of law. In either situation the attorney's disability is the result of conduct wholly unrelated to his client's case. In our opinion the situation resulting here from the plaintiff's disbarment is not dissimilar to that when an attorney is incapacitated by reason of death, illness or insanity. In such cases it has been uniformly held that because of his inability to perform the contract is discharged, but that the attorney may nevertheless recover in *quasi* contract for the reasonable value of the services rendered, 45 *A. L. R.* 1135, 1158. Nor is recovery in *quasi* contract here barred by virtue of the express contract for a contingent fee, for as we have indicated that contract was discharged by opera-

tion of law when its performance was rendered impossible by the plaintiff's disbarment.

The fact that the defendant was compelled by virtue of the plaintiff's disbarment to retain other counsel to prosecute her claim is, of course, to be considered in determining the reasonable value of the plaintiff's services. In no event, however, should the plaintiff's recovery exceed the amount stipulated for in his express agreement less whatever reasonable sum the defendant paid other counsel to complete the case. While the express contract has been discharged and cannot serve as the measure of recovery, it does operate as a limit on the amount of the recovery in *quasi* contract, 6 *Williston on Contracts* (*Rev. ed.* 1938), § 1977, *p.* 5557; *Woodward, The Law of Quasi Contracts* (1913), § 125, *p.* 197.

In view of the conclusions we have reached, it becomes unnecessary to consider the other questions raised by the plaintiff. The judgment appealed from is reversed and the cause remanded for further proceedings in accordance with this opinion.

WACHENFELD, J. (dissenting). In *In re Woodworth,* 15 *Fed. Supp.* 291; affirmed, 85 *F.* 2d 50 (*C. C. A.* 2, 1936), the court held:

"On principle, it cannot be doubted that when an attorney makes an agreement to prosecute a case for a fee contingent on success, and is disbarred before the fee is earned, he may not collect compensation from his client for the work done. The agreed fee he cannot have, because he has not performed his engagement and the contingency on which the compensation was to rest has not happened. Reasonable compensation in lieu of the fee he cannot have, because his inability to complete his contract has been brought about by his own wrongful conduct."

I subscribe to this reasoning and conclusion and am therefore to affirm.

Adopting this rule would not complicate or bring economic considerations into disciplinary proceedings nor would it defeat their purpose. It would, in my opinion, be an added incentive to professional conduct, which is foreign to disciplinary complaints.

Admittedly, the plaintiff was disbarred because of his own wrongful act, and whether it was with reference to this particular case or not, the result, in my opinion, is the same.

The penalty falls and he can no longer represent his client because of his wrongful conduct. The result of that misconduct should be uniform, not varying with the degree of culpability or its relationship to any particular case.

"His inability to complete his contract has been brought about by his own wrongful conduct."

I would affirm the judgment.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—Justice WACHENFELD—1.