**Stuart A. EISENBERG**

v.

**GENERAL MOTORS ACCEPTANCE CORP.**

**No. 90–5857.**

United States District Court, E.D. Pennsylvania.

March 19, 1991.

Tom P. Monteverde, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for plaintiff.

William F. Kiniry, Jr., Harvey, Pennington, Herting and Renneisen, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BUCKWALTER, District Judge.

The defendant, General Motors Acceptance Corporation ("GMAC"), moves to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that the plaintiff has failed to state a claim upon which relief can be granted. Our jurisdiction is based upon diversity of citizenship.

### Factual Background

The plaintiff, Stuart A. Eisenberg, represented defendant G.M.A.C. as a collection attorney from July of 1978 until February of 1990. The plaintiff represented GMAC on a contingent fee basis whereby the plaintiff was entitled to retain a fixed percentage of the funds which he actually collected for GMAC. In March, 1989, GMAC informed Eisenberg that it would cease to refer any new matters to him but that he could continue to represent GMAC on all pending matters. On February 10, 1990, the plaintiff resigned from the practice of law in Pennsylvania pursuant to Rule 215 of the Pennsylvania Rules of Disciplinary Enforcement for reasons unrelated to his representation of the defendant. When GMAC learned that Eisenberg was no longer a member of the Pennsylvania Bar, it directed Eisenberg to return all opened and closed files which had previously been assigned to him.

The plaintiff filed this action on September 11, 1990, seeking, *inter alia, quantum meruit* recovery of contingent fees and reimbursements allegedly incurred during the period of his representation of the de-

fendant. The plaintiff brings separate counts for intentional infliction of emotional distress and defamation.

### Claim for Fees

It is the defendant's position that the plaintiff's voluntary resignation from the practice of law during the period of his representation of the defendant should absolutely bar the plaintiff from recovering fees from the defendant. According to the defendant, the disciplinary resignation or disbarment of an attorney prior to his completion of his representation of a client is equivalent to the voluntary and unjustifiable withdrawal prior to the completion of a case by which an attorney forfeits his right to compensation.

Different courts have taken different positions on the subject of an attorney's right to compensation as affected by his disbarment or suspension before he has completed representation of a client. (See 24 A.L. R.3d 1193). Defendant cites *Fletcher v. Krise*, 120 F.2d 809 (D.C.Cir.1941), which held that disbarment before the completion of the case is tantamount to a voluntary and unjustified withdrawal from the case, and the disbarred attorney loses his right to compensation.

Other courts have taken a different approach and hold that when an attorney is disbarred or suspended from practice for reasons which are unrelated to his representation of a particular client, he is still entitled to recover for the reasonable value of services provided to that client prior to disbarment. In *Stein v. Shaw*, 6 N.J. 525, 79 A.2d 310 (1951), the New Jersey Supreme Court took this position. The plaintiff in *Stein* was an attorney who verbally agreed to represent the defendant on a contingent fee basis in a personal injury case. The plaintiff had commenced an action on behalf of the defendant and had started settlement negotiations when he was disbarred for reasons unrelated to his representation of the defendant. The defendant refused to pay the plaintiff for services rendered prior to disbarment, and the plaintiff consequently filed suit against the defendant.

The New Jersey Supreme Court held that "the plaintiff should be permitted to recover in quasi contract for the reasonable value of his services rendered and disbursements made prior to his disbarment, for otherwise the defendant will be unjustly enriched at the expense of the plaintiff." 79 A.2d at 311. We agree with the court that withdrawal from a suit because of disbarment cannot be deemed equivalent to an unjustified abandonment of a contract; disbarment or disciplinary resignation automatically terminates the attorney client relationship by operation of law while voluntary abandonment can only occur because of the action or inaction of the attorney. We find the New Jersey Supreme Court's statement that "[t]here is no sound reason in law or morals for permitting the defendant to use the plaintiff's disbarment as an escape from paying him for services rendered . . ." (*Id.* at 311) may be applicable to this case. Accordingly, Count I of plaintiff's complaint shall not be dismissed and the plaintiff shall be given the opportunity to prove his entitlement to fees and/or reimbursement for expenses.

The defendant argues that *Stein* is inapplicable to the case at bar because *Stein* involved an involuntary disbarment while the plaintiff in this case "voluntarily" consented to his disbarment and thus "abandoned" his client without just cause. We believe that defendant has raised a "distinction without a difference." The loss of one's license to practice law, whether voluntarily or involuntarily, prohibits one from practicing law and provides a proper reason to withdraw from a case.

As to the question of voluntariness, the plaintiff's resignation was, under the Rules of Disciplinary Enforcement, tantamount to a guilty plea. Rule 215 of the Pennsylvania Rules of Disciplinary Enforcement provides that an attorney who is the subject of an investigation into allegations of misconduct may resign if he submits a verified statement to the Disciplinary Board which states, *inter alia*, that his resignation was freely and voluntarily given and that the material facts upon which the complaint against him is based are

true. Thus in resigning from the bar, the plaintiff admitted that he was guilty of misconduct in a matter not related to his representation of the defendant. This resignation effectively precluded the plaintiff from continuing his representation of the defendant and all other clients. The plaintiff's decision to resign from the bar may itself have been voluntary, but the termination of his professional services to the defendant was simply an inevitable consequence of this decision rather than a voluntary, independent act. Furthermore, when the plaintiff resigned from the bar under Rule 215, he had no reason to believe that in doing so he was agreeing to the forgiveness of all debts currently owed to him. We find no reason to conclude that the imposition of such a penalty was intended by the drafters of Rule 215, and we decline to impose it here.

### Intentional Infliction of Emotional Distress

The second count of the plaintiff's complaint seeks to recover for "Intentional Infliction of Emotional and Economic Distress." Since we are unaware that any tort known as "intentional infliction of economic distress" is recognized in the courts of Pennsylvania, the plaintiff's claim which seeks to recover for the intentional infliction of economic distress will accordingly be dismissed with prejudice.

Cases applying Pennsylvania law which have recognized the tort of intentional infliction of emotional distress have consistently required that the conduct upon which such a claim is based must be both extreme and outrageous. In *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir.1979), the Third Circuit applied Pennsylvania law and the Restatement (Second) of Torts in concluding that liability for intentional infliction of emotional distress may only be imposed

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Restatement (Second) of Torts, § 46, comment d.

Plaintiff's claim for intentional infliction of emotional distress is primarily based upon the allegation that the defendant deliberately sought to cause him various economic hardships in large part through their failure to make timely payment of his invoices. We have little difficulty in concluding that such allegations of rather ordinary hardships which are common in many business relationships lack the requisite degree of outrageousness to form the basis for a cause of action under the above cited section of the Restatement. Count II of plaintiff's complaint will consequently be dismissed with prejudice.

### Libel and Slander

In the final count of his complaint (Count III), the plaintiff charges that "[f]rom time to time subsequent to February 10, 1990, GMAC, by certain of its officers and employees, representatives and agents, has issued false and defamatory statements to the effect that plaintiff was terminated as a GMAC branch attorney because he embezzled money from GMAC." The attached Exhibit D we believe meets the requirements for specificity concerning a defamation claim. We will therefore deny defendant's motion with regard to Count III.

Based upon the foregoing memorandum, the following order is entered:

AND NOW, this 15th day of March, 1991, upon consideration of defendant General Motors Acceptance Corporation's Motion to dismiss plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the briefs submitted by the parties in support thereof and in opposition thereto, it is hereby

ORDERED that said Motion is:

(1) DENIED as to Count I of Plaintiff's Complaint;

(2) GRANTED as to Count II of Plaintiff's Complaint, and Count II of Plaintiff's Complaint is hereby dismissed with prejudice;

(3) DENIED as to Count III of Plaintiff's Complaint.

It is further ORDERED and DECREED that defendant shall answer the complaint within twenty (20) days of the date of this order, or judgment of default may be entered against it.