In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Arlen MEKLER, Respondent.

No. 305, 1994.

Supreme Court of Delaware.

Submitted: Dec. 20, 1995.
Decided: Dec. 29, 1995.

Charles Slanina, Biggs and Battaglia, Wilmington, for Respondent.

David Curtis Glebe, Chief Disciplinary Counsel, Wilmington, *for Office of Disciplinary Counsel.*

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

PER CURIAM:

The matter now before the Court is a Request for Instructions (the "Request") by Respondent Arlen Mekler ("Mekler" or "Respondent") arising out of this Court's Opinion and Judgment of November 27, 1995 (the "Judgment"). Pursuant to the terms of the Judgment, Respondent has been suspended, effective January 1, 1996, from the practice of law for a period of not less than one year upon findings of certain violations of the Delaware Lawyers' Rules of Professional Conduct. The Request relates primarily to two areas involving the scope of the Judgment: the receipt of fees for services rendered but not paid and a proposed employment of Respondent as a paralegal or law clerk in the office of a member of the Delaware Bar. We conclude that nothing in the Judgment prohibits the receipt of such fees. As to the proposed employment, it is approved, but not in the scope requested, and it will be subject to the terms of this Opinion.

According to the Request, Respondent has made certain plans and arrangements for his activities during the suspension and has provided Disciplinary Counsel with a report relating thereto. The Request raises appropriate questions of clarification relating to the scope of the Judgment.

### 1. *Receipt of Fees*

Paragraph (2) of the Judgment provides:

(2) During the suspension, Respondent shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees).

*In re Mekler,* Del.Supr., 669 A.2d 655, 671 (1995). The Request informs the Court that all active files of Respondent will be transferred to E. Martin Knepper, Esquire ("Knepper") with appropriate notice given to all clients and opposing counsel as required by Rule 24 of the Rules of the Board on Professional Responsibility and by paragraph (3) of the Judgment.

The Request further informs the Court that Mekler is due fees for past services. Assuming the fees (and presumably also disbursements) have been billed before the date of suspension and that such charges are proper, Mekler is a creditor and the former client is a debtor as to such proper charges. Nothing in the Judgment precludes Respondent from receiving payment of such charges during the period of suspension, and accounting properly for such receipt. Moreover, nothing in the Judgment precludes Respondent from taking appropriate means to collect past due accounts properly owing, provided that all such steps taken by him are clearly taken as an individual creditor and that no such step will be undertaken in a manner which would lead a reasonable person to believe that Mekler is acting as a lawyer. For example, Mekler may not use his office letterhead or other indicia of his former status as a lawyer for any purpose during the suspension, including the collection of past due accounts. He may, of course, engage a member of the Bar to represent him in the collection of past due accounts, but his role in that event will be solely as a client-creditor and he may not leave any impression that he is acting as a lawyer or as the agent of a lawyer.

### 2. *Employment as a Clerk or Paralegal*

The Request informs the Court that Mekler wishes to accept employment in Knepper's office as a paralegal or law clerk. Mekler properly directs the Court's attention to our Opinion in *In re Frabizzio,* Del.Supr., 508 A.2d 468 (1986). In that case, the Court permitted the respondent, during a suspension, to perform the tasks usually performed by law clerks and paralegals who are not members of the Bar, provided that the suspended lawyer "may not have direct contact as a law clerk or paralegal with clients, witnesses, or prospective witnesses." *Id.* at 469.

Mekler recognizes the force of this Court's decision in *Frabizzio*, but requests permission to have certain limited client contacts, contending in the Request as follows:

14. The nature of Family Court practice is such that paralegals and law clerks routinely assist their supervising attorneys in interviewing clients and completing Family Court forms and obtaining financial and personal data for Pre–Trial Asset Reports. This function necessitates contact with clients.

15. In order to be marketable and useful to a Family Court practitioner, a paralegal or law clerk must be able to speak to clients in order to obtain and convey factual information.

16. Respondent respectfully submits that adequate safeguards could be employed to preclude any misconception on the part of the general public or any individual client as to his status as a non-attorney. These could include the following:

a. Strict supervision by any attorney employing Respondent as a paralegal or law clerk.

b. A sign on Respondent's office door stating that he is a paralegal or law clerk.

c. A sign on Respondent's desk stating that he is a paralegal or law clerk, as well as on his card.

d. A business card identifying him as a paralegal or law clerk.

e. A written disclaimer to all clients in the fee agreement and elsewhere that Respondent is a paralegal or law clerk.

17. Respondent would, at no time, offer a client legal advice or opinions. To avoid confusion, Respondent would not convey legal advice or opinion of his employer. *Request* at ¶¶ 14–17.

■ The Court concludes that nothing in the Judgment would preclude Respondent from being employed by a member of the Bar as a paralegal or law clerk to assist that member of the Bar. The scope of such services must, however, be strictly confined to the terms of the *Frabizzio* decision, which means no direct contact with clients, witnesses or prospective clients or prospective witnesses. Mekler himself notes in the Request the concern "that the public would observe an attorney, supposedly under suspension for unethical conduct, walking into a law office and would necessarily wonder whether the attorney was actually being disciplined." *Request* at ¶ 10.

Mekler argues that he should be permitted some client contact because it is the "nature of Family Court practice" for paralegals and law clerks to "routinely assist their supervising attorneys in interviewing clients and completing Family Court forms and obtaining financial and personal data for Pre–Trial Asset Reports." *Request* at ¶ 14. The Court assumes, for purposes of this Opinion, that this is an accurate statement of the general Family Court practice. The Court does not herein condone or condemn this general practice because that issue is not before the Court. Nevertheless, the Court does note that this assumed general practice is fraught with the peril that a non-lawyer could cross the line, or be perceived as crossing the line, into the unauthorized practice of law unless proper procedures are clearly and punctiliously established and observed in the various law offices.

What is before the Court is whether Mekler, as a suspended lawyer acting as a paralegal or law clerk for a member of the Bar, may have the kind of contact with clients or prospective clients and witnesses or prospective witnesses for which permission is sought in the Request, even under the purported "safeguards" offered in the Request. *Request* at ¶ 16. The Court declines to interpret the Judgment to permit such conduct.

■ Perception is often reality. It would be very difficult for the members of the public to be expected to understand Mekler's status if he were permitted such contacts. He has been a member of the Bar for approximately twenty-three years and presumably is generally known as a lawyer. Even under the "safeguards," it is reasonable to anticipate that some members (perhaps many members) of the public will be confused as to his status and may well assume he is acting as a lawyer. It is the responsibility of this Court to protect members of the public in their dealings with those providing legal services and to prevent non-lawyers (including suspended lawyers) from the prac-

tice of law or the perceived practice of law. That responsibility would not be advanced if this Court were to accede to the Request. It must be clear to the public that this Court is effective in its discipline of members of the Bar, that its judgments will not be diluted and that it will not send mixed signals.

■ Moreover, part of Mekler's own difficulty, as set forth in our November 27, 1995 Opinion, involved the failure to supervise his own non-lawyer staff in their dealings with clients. Those members of his staff exceeded the ministerial duties which non-lawyers may properly perform in a law office. Mekler implicitly asserts that he would not fall into the same practice. Nevertheless, this Court cannot countenance any conduct by a suspended lawyer which would leave the impression to a reasonable person that the Court would allow the same kind of "business as usual" which it has already found to be impermissible in Mekler's own case, or that it is *de facto* permitting a suspended lawyer to be doing any act which a reasonable member of the public could believe to be the practice of law.

Accordingly, the Request is disapproved to the extent inconsistent with this Opinion. Respondent shall not have any direct contact with clients or prospective clients or witnesses or prospective witnesses when acting as a paralegal or law clerk under the supervision of a member of the Bar, or otherwise.