633 S.E.2d 241

LAWYER DISCIPLINARY
BOARD, Complainant,

v.

John Patrick BALL, a Member
of the West Virginia State
Bar, Respondent,

and

Monongalia County Bar Association,
Intervenor.

No. 31794.

Supreme Court of Appeals of
West Virginia.

Submitted: May 23, 2006.

Decided: June 15, 2006.

Lawrence J. Lewis, Office of Disciplinary Counsel, Charleston, for Complainant.

Allan N. Karlin, Allan N. Karlin & Associates, and Charles J. Crooks, Jackson Kelly, P.L.L.C., Morgantown, for Intervenor.

William C. Brewer, Brewer & Giggenbach, Morgantown, and Patrick D. Deem, Steptoe & Johnson, Clarksburg, and Morgan Palmer Griffith, Charleston, for Respondent.

DAVIS, C.J.

This is a lawyer disciplinary proceeding against John Patrick Ball (hereinafter referred to as "Mr. Ball"), by the Office of Disciplinary Counsel (hereinafter referred to as "the ODC"), on behalf of the Lawyer Disciplinary Board. A Hearing Panel Subcommittee (hereinafter "the Panel"), determined that Mr. Ball committed five violations of the Rules of Professional Conduct.[1] Consequently, the Panel and the ODC have recommended the following: (1) that Mr. Ball remain on inactive status and not practice law for a period of not less than five years;[2] (2) that after five years Mr. Ball must file a petition for reinstatement to active status; (3) that Mr. Ball reduce his annual fee charged for overseeing funds donated to the WVU Foundation under the wills of Vivian D. Michael and Gladys G. Davis to 0.25% of the market value of the funds; (4) that Mr. Ball's executor fee from the Estate of Earle L. Elmore be not more than 5%; (5) that Mr. Ball forego any oversight fee for funds donated to the WVU Foundation under the Elmore Estate; and (6) that upon reinstatement to active status Mr. Ball must pay the WVU Foundation $500,000.

Mr. Ball does not object to the Panel's recommendations. The Monongalia County Bar Association (hereinafter "the Bar"), which was permitted to intervene in this matter, filed a brief asking this Court to reject the recommendations and require Mr. Ball to make full restitution of all monies obtained in violation of the Rules of Professional Conduct. After a thorough review of the briefs and record in this proceeding, and consideration of oral arguments, we reject the Panel's recommendations. As is more fully set out in the Conclusion section of this opinion, Mr. Ball's license to practice law in this state is annulled, along with other specific sanctions herein imposed.

## I.

### FACTUAL BACKGROUND

On July 6, 2004, a six count statement of charges was filed against Mr. Ball by an

---

1. Mr. Ball and the ODC submitted stipulated findings of fact, conclusions of law, and recommended discipline which were adopted by the Panel.

2. Mr. Ball went on inactive status a few days before the statement of charges was filed against him in this matter.

investigative panel. The charges arose as a result of information being sent anonymously to the ODC regarding wills prepared by Mr. Ball for two deceased clients, Vivian D. Michael (hereinafter "Ms. Michael") and Gladys G. Davis (hereinafter "Ms. Davis").[3] The facts underlying each of the five counts are summarized below.

**First Charge.** On November 7, 1996, Ms. Michael and Ms. Davis went to Mr. Ball's office and executed their wills, which were prepared by Mr. Ball.[4] The will of Ms. Michael bequeathed an automobile she owned to Mr. Ball. The wills of both sisters left all tangible personal property, including personal effects, household goods and jewelry to Mr. Ball's wife. Ms. Michael died on January 6, 1998. Ms. Davis died on January 3, 2001. The value of the items bequeathed to Mr. Ball and to his wife totaled $64,000.[5]

As a result of Mr. Ball's preparation of wills giving him and his wife testamentary gifts from clients who were not related to either of them, the Panel found that Mr. Ball violated Rule 1.8(c).[6]

**Second Charge.** On April 30, 1998, about four months after the death of Ms. Michael, Mr. Ball transported Ms. Davis to Huntington Bank in Morgantown. The purpose of the trip was to have Ms. Davis change the name of the beneficiary of an annuity she owned. The previous beneficiary was her deceased sister, Ms. Michael. While at the bank, Ms. Davis designated Mr. Ball's two adult children, Whitney L. Ball and John P. Ball, Jr., as the new beneficiaries of the annuity. Mr. Ball knew in advance that his two sons would be named beneficiaries of the annuity. In fact, Mr. Ball provided Ms. Davis with the addresses and social security numbers of his sons for the purpose of making the changes. When Ms. Davis died in 2001, the annuity was valued at $487,783.13. This money was distributed in equal amounts to Mr. Ball's two sons after Ms. Davis' death.

The Panel found that Mr. Ball's conduct in connection with the change in beneficiaries of the annuity violated Rule 1.7(b), as it was contrary to his fiduciary obligations to Ms. Davis, and his representation of her interests was materially limited by his own interests.[7]

**Third Charge.** Mr. Ball was named the executor of the wills of Ms. Michael and Ms. Davis.[8] The wills of both sisters, as drafted by Mr. Ball, stated that the executor would receive compensation in the amount of seven and one-half percent of the total gross estate. At the time each will was drafted by Mr. Ball the generally accepted maximum charge for administering an estate was 5% of the total gross estate. At the death of Ms. Michael, her estate was valued at $10,052,223.18. At the time of Ms. Davis' death, her estate was valued at $11,495,391.00. As the executor of Ms. Michael's estate, Mr. Ball received $785,996. Mr. Ball received $837,362 as executor of Ms. Davis' estate.[9]

---

3. Information regarding a third deceased client, Earle L. Elmore, was also obtained, but the record does not indicate how this information was provided.

4. Ms. Michael and Ms. Davis were sisters and longstanding clients of Mr. Ball. At the time the two sisters executed their wills, Ms. Michael was 81 years old and Ms. Davis was 84 years old.

5. The automobile bequeathed to Mr. Ball was valued at $20,000. The items bequeathed to his wife were valued at $44,300.

6. Rule 1.8(c) provides: "(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."

7. Rule 1.7(b) provides:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

8. Ms. Michael's will named Ms. Davis as executrix of her will and named Mr. Ball the substitute executor. Ms. Davis' will named Ms. Michael as executrix of her will and named Mr. Ball the substitute executor. However, Mr. Ball was qualified as the executor of both wills.

9. Additionally, a trust was apparently set up for Ms. Davis after her sister's death. Mr. Ball was

The Panel found Mr. Ball's fee of seven and one-half percent of the total gross estate of both sisters to be excessive and unreasonable, and violative of Rule 1.5(a).[10]

**Fourth Charge.** The wills of Ms. Michael and Ms. Davis provided for funds from their respective estates to be given to the West Virginia University Foundation (hereinafter "the Foundation") for specific purposes.[11] Both wills provided that Mr. Ball, as the executor of each will, would have some oversight of the funds given to the Foundation. In addition, both wills allowed Mr. Ball to set the fee he would charge for overseeing the gift to the Foundation. Moreover, after the death of Ms. Michael, Mr. Ball drafted a Codicil to the will of Ms. Davis. The Codicil provided that if Mr. Ball was unable to act as executor of Ms. Davis' estate and overseer of the gift to the Foundation, his wife would be appointed. Should Mrs. Ball be unable to fulfill her duties as executrix, then Mr. Ball's law partner and another attorney would be jointly appointed. The Codicil was signed by Ms. Davis.

The total amount of funds bequeathed to the Foundation was $18,400,000. Mr. Ball negotiated an agreement with the Foundation to obtain an annual fee of 1% of the market value of the respective funds bequeathed by each sister. This agreement, as it pertained to Ms. Davis' funds, was signed by Mr. Ball, his wife, and the other substitute

executors to Ms. Davis' estate. Subsequent to signing the agreement, Mr. Ball received a total of $336,889.61 from the Foundation.

The Panel found that Mr. Ball violated Rule 1.7(b) when he drafted the wills to give himself complete discretion to set the fee for his ministerial work in overseeing the funds bequeathed to the Foundation and in drafting the Codicil to name is wife as substitute executor for Ms. Davis' estate.[12] Additionally, the Panel found that Mr. Ball violated Rule 1.5(a) by negotiating an excessive and unreasonable fee of 1% of the market value of the respective funds bequeathed to the Foundation.[13]

**Fifth Charge.** Mr. Ball prepared a will for Earle L. Elmore (hereinafter Mr. Elmore), which was executed on September 17, 1997.[14] The will appointed Mr. Ball as executor and authorized him to receive compensation of 7½ % of the total gross estate. Mr. Elmore died on May 4, 2003, leaving an estate valued at $1,388,579.

When the statement of charges was filed, it was unclear whether Mr. Ball had obtained his fee as executor of Mr. Elmore's estate. Consequently, the statement of charges alleged that Mr. Ball violated Rule 1.5(a) if he had obtained the excessive fee.[15] Alternatively his conduct violated Rule 8.4(a) had he not received the fee.[16]

named the trustee and, as such, received a total of $318,933 in compensation for administering the trust.

10. Rule 1.5(a) provides:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

11. This gift was not to be given to the Foundation until both sisters died.

12. For the text of Rule 1.7(b), see *supra* note 7.

13. For the text of Rule 1.5(a), see *supra* note 10.

14. Mr. Elmore was 94 years old when the will was executed.

15. For the text of Rule 1.5(a), see *supra* note 10.

16. Rule 8.4(a) provides: "it is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

The Panel has recommended dismissal of Count V of the statement of charges, based *solely* upon a stipulation by Mr. Ball and the ODC to dismiss the count. Even so, the Panel has recommended that Mr. Ball not be allowed to receive more than 5% of the estate as executor.

**Sixth Charge.** The will of Mr. Elmore provided for the bulk of his estate to be given to the Foundation for specific purposes. The will also provided that Mr. Ball, as the executor of the estate, have some oversight of the funds given to the Foundation. In addition, the will allowed Mr. Ball to set the annual fee he would charge for overseeing the gift to the Foundation. The will suggested that the fee could be one percent of the gross assets of the funds.

When the statement of charges was filed it was unclear whether Mr. Ball had obtained a fee (and in what amount) for his ministerial work overseeing the funds bequeathed to the Foundation. Consequently, the statement of charges alleged that Mr. Ball violated Rule 1.7(b) if he had obtained the excessive fee.[17] Alternatively, his conduct violated Rule 8.4(a) if he had not received the fee.[18]

The Panel has recommended dismissal of Count VI of the statement of charges, based *solely* upon a stipulation by Mr. Ball and the ODC to dismiss the count. Even so, the Panel has recommended that Mr. Ball receive no oversight fee for the funds bequeathed to the Foundation.

## II.

### STANDARD OF REVIEW

The standard of review for a lawyer disciplinary proceeding was set out in syllabus point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A de novo standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful

consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* Syl. pt. 3, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). Additionally, we have made clear that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

## III.

### DISCUSSION

As previously indicated, the Panel's recommended findings and sanctions were adopted from a stipulation by Mr. Ball and the ODC. Consequently, neither Mr. Ball nor ODC contest the violations found by the Panel and its recommended sanctions. In light of this situation, we will not disturb the Panel's determination that, with respect to matters involving the estates of Ms. Michael and Ms. Davis, Mr. Ball engaged in conduct that violated five provisions of the Rules of Professional Conduct. However, the Bar argues that the recommended sanctions "should be rejected because it is inconsistent with the purpose of lawyer disciplinary proceedings." This Court has held that in determining the imposition of lawyer disciplinary sanctions we will consider the following factors:

(1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

---

**17.** For the text of Rule 1.7(b), see *supra* note 7.

**18.** For the text of Rule 8.4(a), see *supra* note 16.

Syl. pt. 4, in part, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998). Prior to discussing each of the *Jordan* factors, we must first examine the disposition of the charges involving the Elmore will.

## A. Recommendation to Dismiss Charges Involving the Elmore Will

As we previously noted, the will of Mr. Elmore provided that Mr. Ball would receive a 7½ % fee as executor of his estate, and that Mr. Ball could set an annual fee for overseeing funds bequeathed to the Foundation, which fee was suggested as being 1% of the gross assets of the funds. The record indicates that when the statement of charges was filed involving Mr. Elmore's will, Mr. Ball had obtained no fees as executor of Mr. Elmore's estate, nor had he received any fees for overseeing the gift Mr. Elmore bequeathed to the Foundation. It also appears that at the time of the hearing before the Panel such fees had not been collected. Insofar as Mr. Ball agreed to reduce his executor fee for Mr. Elmore's estate and to forego any fee for overseeing the gift to the Foundation, the Panel recommended dismissing the charges involving Mr. Elmore's will. Simply put, we reject this recommendation.

■ We have held that " '[t]his Court may in appropriate circumstances exercise its inherent supervisory power to review attorney disciplinary charges for which the [Hearing Panel] has not recommended discipline.' " *Lawyer Disciplinary Bd. v. Kupec,* 202 W.Va. 556, 568, 505 S.E.2d 619, 631 (1998) (quoting Syl. pt. 3, *Committee on Legal Ethics of West Virginia State Bar v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325 (1988)). Further, in *Kupec* we held that "[s]hould [this] Court reject the recommendation of dismissal of a formal charge by the Hearing Panel . . ., an evidentiary record is necessary for the Court to determine the proper disposition of the charge." *Kupec,* 202 W.Va. at 567, 505 S.E.2d at 630. In the instant case, the record is sufficient for this Court to determine the proper disposition of charges involving the Elmore will. In doing so, we

are mindful that charges of lawyer misconduct must be proven by clear and convincing evidence. *See* Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence.").

■ The uncontested evidence in this case illustrates that Mr. Ball drafted a will for Mr. Elmore naming Mr. Ball as the executor. The will also provided that Mr. Ball would receive a seven and one-half percent fee as executor of the estate. Even though Mr. Ball had yet to receive the fee when the charges were filed, his conduct in drafting the will providing for an excessive fee of 7½ % was an attempt to violate the Rules of Professional Conduct. Therefore, his conduct violated Rule 8.4(a).[19]

■ Additionally, Mr. Elmore's will permitted Mr. Ball to oversee the bequeath to the Foundation for a fee to be determined by Mr. Ball, with a suggestion of 1% of the gross assets of the funds. Again Mr. Ball had not received this fee when the charges were brought. However, his conduct in drafting the will suggesting an excessive fee of 1% was an attempt to violate the Rules of Professional Conduct. Therefore his conduct violated Rule 8.4(a).[20] We will now consider Mr. Ball's conduct involving all violations under the *Jordan* factors.

## B. Violation of a Duty

■ Under the first factor set out in *Jordan* we must determine whether Mr. Ball's conduct violated a duty owed to his clients, to the public, to the legal system or to the profession. This Court has recognized that "[o]ur profession is founded, in part, upon the integrity of the individual attorney in his dealings with the public in general and his clients in particular." *Office of Lawyer Disciplinary Counsel v. Tantlinger,* 200 W.Va. 542, 548, 490 S.E.2d 361, 367 (1997). Further, "[t]he relation between attorney and client is a fiduciary relation of the very high-

19. For the text of Rule 8.4(a), see *supra* note 16.

20. For the text of Rule 8.4(a), see *supra* note 16.

est character." *Estate of Auen*, 30 Cal. App.4th 300, 309, 35 Cal.Rptr.2d 557 (1994) (superseded by statute). The court in *Iowa Supreme Court Board of Professional Ethics and Conduct v. Winkel*, addressed the issue of an attorney receiving a bequest from a will that he/she drafted:

> It is no defense that the idea for the bequest originates with the client or that the bequest was not actually enjoyed. It is certainly no answer that the lawyer exercised no undue influence in precipitating such a bequest. Even a strong desire by the client to bequeath property to a lawyer will not justify the lawyer in drafting such a will. Lawyers who would enjoy the right to inherit property from persons disposed to favor them must take extreme pains to distance themselves from any professional activity incident to establishing the bequest. All professional advice and legal work in such an undertaking must come from an independent lawyer of the client's, not the initial lawyer's, choosing.

541 N.W.2d 862, 864 (Iowa 1995). *Cf. Frye v. Norton*, 148 W.Va. 500, 514, 135 S.E.2d 603, 612 (1964) (no undue influence or other impropriety when attorney received bequest from will of client because attorney did not participate in drafting of will).

■■ As a result of the high standard placed upon the fiduciary relationship between an attorney and his/her client, we adopt the rule followed by other courts and hold that a rebuttable presumption of undue influence by an attorney arises when (1) there is an attorney-client relationship with the testator at the time a will was prepared, (2) the attorney actively participated in preparation of the will, and (3) the attorney, or a person who is a parent, child, sibling or spouse related to the attorney but not to the testator, receives a bequest under the will.[21] *See Estate of Auen*, 30 Cal.App.4th at 311, 35

Cal.Rptr.2d 557. *See also Clarkson v. Whitaker*, 657 N.E.2d 139, 144 (Ind.Ct.App.1995) ("When an attorney drafts a will that includes a bequest or provides a benefit to the attorney or one of his family members, the will is presumed to be void for undue influence or fraud."); *In re Fankboner, Pallatin v. Jones*, 638 So.2d 493, 495 (Miss.1994) ("Suspicious circumstances, along with the confidential relationship, also give rise to a presumption of undue influence."); *Matter of Henderson*, 80 N.Y.2d 388, 394, 590 N.Y.S.2d 836, 605 N.E.2d 323 (1992) ("[A] question of undue influence often arises when a person in a position of trust and confidence becomes the object of the other party's generosity. Such scrutiny is especially important when attorney-beneficiaries are involved, since the intensely personal nature of the attorney-client relationship, coupled with the specialized training and knowledge that attorneys have, places attorneys in positions that are uniquely suited to exercising a powerful influence over their clients' decision."); *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 567 N.E.2d 1291, 1296 (Ohio, 1991) ("Because of the peculiar susceptibility of a client/testator to the influence of the attorney he consults in connection with the preparation of his will, we agree with those jurisdictions that have recognized that a refutable presumption arises whenever an attorney, unrelated to the testator by blood or by marriage, assists in the preparation of a will in which he is a named beneficiary."); *In re Disciplinary Proceeding Against Miller*, 149 Wash.2d 262, 66 P.3d 1069, 1080 (2003) ("The RPC prohibits lawyers from drafting wills in which they receive substantial gifts because the practice is inherently permeated with the dangers of self-dealing and undue influence.").[22]

■ The evidence in this case clearly established that Mr. Ball drafted three wills in which he gave himself excessive fees as an

---

21. We will also note that when the issue of undue influence is established in a disciplinary proceeding it is treated as an aggravating circumstance for purposes of imposing sanctions.

22. The rebuttable presumption of undue influence adopted in this opinion is limited in its application to the context of an attorney-client relationship in the formulation of a will. Consequently, our ruling today modifies, but does not

overrule prior decisions of this Court which held that "[u]ndue influence which will invalidate a will is never presumed but must be established by proof which, however, may be either direct or circumstantial." Syl. pt. 15, *Ritz v. Kingdon*, 139 W.Va. 189, 79 S.E.2d 123 (1953), *overruled on other grounds by State v. Bragg*, 140 W.Va. 585, 87 S.E.2d 689 (1955).

executor, drafted two wills that improperly conveyed property to himself and his wife, and assisted in changing a client's annuity to benefit his sons. This conduct satisfies the requirements for invoking the rebuttable presumption of undue influence by Mr. Ball in drafting and assisting in the preparations of documents for Ms. Michael, Ms. Davis and Mr. Elmore. However, Mr. Ball asserts that the issue of "undue influence" was never alleged in this case. The record supports this defense. Nevertheless, for the purposes of our disposition of the case, we need not remand this issue for Mr. Ball to present whatever evidence he can muster to rebut the presumption of undue influence arising from his conduct.[23] The ultimate disposition of this case rests squarely upon our finding that Mr. Ball's conduct violated the duty he owed to his clients not to charge excessive fees, draft wills leaving bequests for himself and his wife, and assisting in making his sons beneficiaries to a client's annuity.

### C. Nature of Conduct

Under the second factor set out in *Jordan* we must determine whether Mr. Ball acted intentionally, knowingly or negligently in violating the Rules of Professional Conduct. Mr. Ball has asserted that his misconduct was not intentional because he was not aware that he violated the Rules of Professional Conduct when he engaged in the misconduct. The ODC disputes this assertion and argues that Mr. Ball's misconduct was intentional. We agree with ODC.

■ It has been appropriately observed that "although lawyers who have drafted a bequest to themselves often claim lack of knowledge of the ethics prohibition, ignorance is no defense to a disciplinary charge." ABA/BNA, Lawyers' Manual on Professional Conduct, p. 51:603 (2006). *See also In re Grevemberg,* 838 So.2d 1283, 1288 (La.2003) ("[I]t is well-settled that ignorance of the Disciplinary Rules which set forth the minimum level of conduct below which no lawyer

may fall without being subject to disciplinary action is no excuse.") (internal quotations and citation omitted); *Attorney Grievance Comm'n of Maryland v. Stein,* 373 Md. 531, 819 A.2d 372, 379 (2003) ("Respondent's defense of ignorance of the rule is no defense at all. Lawyers ... are deemed to know the Rules of Professional Conduct and have the obligation to act in conformity with those standards as a requirement to practice law."). In view of the forgoing authorities, we expressly hold that lawyers who engage in the practice of law in West Virginia have a duty to know the Rules of Professional Conduct and to act in conformity therewith. Consequently, a claim of lack of knowledge of any prohibition or duty imposed under the Rules is no defense in a lawyer disciplinary proceeding.

■ The Rules of Professional Conduct speak for themselves. To the extent that a lawyer ignores the well-reasoned prohibitions and duties under those Rules, he/she does so at his/her own peril. Mr. Ball chose to ignore the Rules. He now attempts to cloak his misconduct in the guise of innocent mistakes. We find Mr. Ball's position to be insulting to the integrity of the Rules and to this Court. Rather than taking full responsibility for his misconduct by admitting what the evidence conclusively establishes, Mr. Ball argues that although he practiced law for over thirty years, he did not know that charging excessive fees, drafting self-aggrandizing wills and assisting a client to enrich his children constituted conduct that was prohibited by the Rules. *Cf. Lawyer Disciplinary Bd. v. Moore,* 214 W.Va. 780, 798, 591 S.E.2d 338, 356 (2003) (Davis, J., concurring) ("[I]t is this Court's duty to the public and the bar to deny reinstatement of a law license when there is no admission to and acceptance of responsibility for the conduct which caused disbarment."). As the ODC appropriately noted, "[t]he suggestion by [Mr. Ball] that his conduct was not intentional is without merit."

---

**23.** In the ODC's reply brief it is suggested that the issue of undue influence did not have to be asserted affirmatively in order to alert Mr. Ball of the need to present evidence to rebut the presumption. We disagree. Insofar as the Rules of

Professional Conduct do not expressly set out a presumption of undue influence in the context of drafting a will, the burden was upon the ODC to affirmatively raise the issue before the Panel.

## D. Amount of Injury

Under the third factor set out in *Jordan* we must determine whether there was any actual or potential injury caused by Mr. Ball's misconduct. The record in this case supports the finding of actual and potential monetary injury to the estates of Ms. Michael, Ms. Davis and Mr. Elmore. Mr. Ball's misconduct resulted in him actually obtaining over two million dollars and potentially receiving additional millions of dollars.[24] Obviously, the actual and potential monetary loss to his clients' estates is overwhelming.

## E. Mitigating and Aggravating Circumstances

Under the fourth factor set out in *Jordan* we must determine the existence of any mitigating or aggravating circumstances surrounding Mr. Ball's misconduct. We will address each issue separately.

**(1) Mitigating circumstances.** Mr. Ball contends that the Panel's disciplinary recommendation is appropriate because of mitigating circumstances surrounding the violations. This Court has held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003). In *Scott,* we outlined some considerations that are viewed as mitigating:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions;

(12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *Scott.*

In this proceeding Mr. Ball cites as mitigating factors (1) the absence of any prior disciplinary action since his admission to the Bar in 1963, (2) the absence of any dishonest or selfish motive, (3) a willingness to forego certain fees that would exceed one million dollars over his expected lifetime, (4) his cooperation during the proceedings, and (5) his remorse. We believe that the record supports four of the five mitigating factors argued by Mr. Ball. The record does not support Mr. Ball's contention that his conduct lacked a dishonest or selfish motive. This issue is discussed in the aggravating circumstances section of the opinion.

**(2) Aggravating circumstances.** This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003). In this proceeding, the Panel has cited to a number of factors which it contends are sufficiently aggravating to warrant adoption of its recommendation. Specifically, the Panel found the following aggravating factors: (1) substantial experience in the practice of law, (2) a pattern of misconduct, and (3) a self-serving motive. We agree with the Panel that the evidence establishes each of these aggravating factors.

**(I) Substantial experience in the practice of law.** Lack of experience as a lawyer is considered mitigating, while substantial experience is deemed aggravating. This distinction is made in recognition of the fact "that a youthful and inexperienced attorney may have [engaged in misconduct] as a result of inexperience rather than as a result of deliberate calculation." *In re Brown,* 166 W.Va. 226, 235, 273 S.E.2d 567, 572 (1980). The record indicates that Mr. Ball was admitted to the practice of law in this state in 1963. At the time of Mr. Ball's misconduct

---

**24.** Because of our ultimate resolution of the issue of restitution, we make no distinction between fees Mr. Ball may have properly been entitled to receive and funds which he improperly received or diverted.

in this case he had been practicing law for over thirty years. Thus, Mr. Ball had substantial experience as a lawyer. Mr. Ball's length of experience in the practice of law aggravates the misconduct in this case because it suggests that his misconduct was the product of deliberate calculation.

■ **(ii) Pattern of misconduct.** The Panel found that Mr. Ball engaged in a pattern of misconduct. *See Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 217, 579 S.E.2d 550, 558 (2003) ("[Lawyer] engaged in a serious pattern of misconduct that involved constant lying."). This finding is supported by Mr. Ball's drafting of three wills that permitted him to receive excessive fees as an executor and as overseer of funds bequeathed to the Foundation. Additionally, there was a pattern of having his clients improperly convey property and funds to his family members.

■ **(iii) Self-serving motive.** The Panel found that a self-serving motive triggered Mr. Ball's misconduct. Mr. Ball has attempted to characterize his conduct not as self-serving, but as that of carrying out the wishes of his clients. We reject such a characterization because it would mean that a lawyer could violate the Rules of Professional Conduct so long as his/her client insists that he/she engage in conduct that violates the Rules. It has been appropriately observed that "the prohibition against preparing an instrument that makes a gift to the drafting lawyer [or his/her relative] cannot be waived by the client" ABA/BNA, Lawyers' Manual on Professional Conduct, p. 51:603 (2006) (citations omitted). In this regard, we hold that the Rules of Professional Conduct cannot be waived by a client, so as to permit a lawyer to do that which the Rules prohibit, unless the Rules themselves provide a specific exception allowing waiver. The Rules reflect the high standards by which all lawyers must abide regardless of the wishes of a client.

■ Clearly, as an attorney practicing for over thirty years, Mr. Ball knew that his clients could not give him permission to violate the Rules. Assuming, for the sake of argument, however, that Mr. Ball's clients

insisted that he violate the Rules, his willingness to do so would demonstrate a self-serving motive to enrich himself and family members.

### F. Sanctions

Mr. Ball and the ODC urge this Court to impose the sanctions recommended by the Panel. The Bar requests this Court reject the recommendation insofar as it does not require full restitution. Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the sanctions that may be imposed upon a finding that a lawyer has violated one or more of the disciplinary rules: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. In fashioning the appropriate sanctions, this Court is mindful of its prior holding that,

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). There are two sanctions that we will discuss: restitution and annulment. However, before addressing those two issues we must examine the Panel's reason for not recommending immediate restitution.

**(1) The Panel misunderstood enforcement of restitution.** The brief of the Bar points out that the Panel believed

> that it lacked any mechanism to enforce restitution other than through restrictions on a lawyer's license or as a condition for reinstatement. As a result, it decided to recommend an agreed disposition ... that permits [Mr. Ball] to retain the funds and property that he and his family received from the estates[.]

We are at a loss to understand the Panel's position on the issue of restitution. This

Court has previously imposed restitution in lawyer disciplinary proceedings that did not involve restrictions on a lawyer's license or as a condition for reinstatement. *See Lawyer Disciplinary Bd. v. Lusk*, 212 W.Va. 456, 462, 574 S.E.2d 788, 794 (2002) (annulling law license and requiring restitution); *Lawyer Disciplinary Bd. v. Askin*, 203 W.Va. 320, 324, 507 S.E.2d 683, 687 (1998) (same). *See also Matter of Elowitz*, 177 Ariz. 240, 866 P.2d 1326, 1330 (Ariz.1994) (disbarring attorney and requiring restitution); *In re Benge*, 783 A.2d 1279, 1287 (Del.2001) (same); *In re Letellier*, 742 So.2d 544, 548 (La.1999) (same); *Matter of Discipline of Babilis*, 951 P.2d 207, 217 (Utah 1997) (same); *Matter of Disciplinary Proceedings Against Wright*, 180 Wis.2d 492, 509 N.W.2d 290, 291 (Wis. 1994) (same).

 It must be underscored that "[t]his [C]ourt's disciplinary orders are not intended to be empty noise. Disciplinary orders are intended to protect the public." *Matter of Disciplinary Action Against Larson*, 512 N.W.2d 454, 457 (N.D.1994) (internal quotations and citation omitted). When this Court imposes sanctions on an attorney, including suspension or annulment, the attorney is still subject to the continuing jurisdiction of this Court as a result of the disciplinary order. *See The Florida Bar v. Ross*, 732 So.2d 1037, 1041 (Fla.1998) ("[S]uspended attorneys, disbarred attorneys, and attorneys who have resigned in the face of disciplinary charges are all subject to the continuing jurisdiction of this Court by virtue of the respective orders under which they were disciplined."). Because of our continuing jurisdiction over a disciplined attorney, the ODC is empowered to take action to enforce compliance with a disciplinary order. That is, "[w]e construe the power and duty of [the ODC] broadly to . . . authorize prosecution of enforcement actions by seeking such relief as injunctions and punishment for contempt of court for noncompliance." *Matter of Disciplinary Action Against Larson*, 512 N.W.2d 454, 458 (N.D. 1994). *See Lawyer Disciplinary Bd. v. Sigwart*, 216 W.Va. 212, 214, 605 S.E.2d 587, 589 (2004) (suspending lawyer's license for being in contempt of prior disciplinary order); *Office of Disciplinary Counsel v. Cun-*

*ningham*, 202 W.Va. 186, 188, 503 S.E.2d 275, 277 (1998) (annulling lawyer's license for being in contempt of prior disciplinary order); *Office of Lawyer Disciplinary Counsel v. Cunningham*, 200 W.Va. 339, 342, 489 S.E.2d 496, 499 (1997) (suspending lawyer's license for being in contempt prior disciplinary order). Moreover, a disciplinary order that requires restitution to a client, which is not imposed as a condition for reinstatement, may be enforced by the client or his/her duly authorized representative through the prosecution of a separate lawsuit. *See generally Burrow v. Arce*, 997 S.W.2d 229 (Tex.1999) (former clients sued lawyers for forfeiture of fees due to breach of duty).

 In view of the foregoing, we hold that when this Court, in a lawyer disciplinary proceeding, issues an order that requires an attorney to make restitution to his or her client, the order may be enforced in two ways: (1) by the Office of Disciplinary Counsel seeking a contempt order from this Court, or (2) through the prosecution of a separate lawsuit by the client or a duly authorized representative of the client.

**(2) Restitution.** The Panel has recommended modest restitution by Mr. Ball, which is contingent upon his seeking to return to active practice. The Bar argues that the Panel's "recommendation sends a message to the public that an attorney can violate ethical standards, engage in unethical conduct that directly benefits himself and his family, charge grossly unreasonable fees and retain the benefits of his unethical conduct." We agree with the Bar. The Panel's restitution recommendation is unsatisfactory.

 "As a matter of policy, a lawyer should be regarded as 'earning' his fee only when he provides legal services to his client in a manner consistent with his professional duties[.]" *Kourouvacilis v. American Fed'n of State, County & Mun. Employees*, 65 Mass.App.Ct. 521, 841 N.E.2d 1273, 1284 n. 22 (2006). Consequently, it is generally recognized that "[a] lawyer's improper conduct can reduce or eliminate the fee that the lawyer may reasonably charge[.]" Restatement (Second) of the Law Governing Law-

yers § 37, p. 271 (2000). The Restatement has set out a standard, which we now expressly adopt, for determining whether a lawyer should forfeit some or all of the fees obtained from a client for legal services:

A lawyer engaging in clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter. Considerations relevant to the question of forfeiture include [ (1) ] the gravity and timing of the violation, [ (2) ] its willfulness, [ (3) ] its effects on the value of the lawyer's work for the client, [ (4) ] any other threatened or actual harm to the client, and [ (5) ] the adequacy of other remedies.

Restatement, § 37, p. 270.

■■■■ Applying the above test to the facts of this case, we find that total restitution is required. There is no question that the violations in this case involve a clear and serious breach of duty Mr. Ball owed to his clients. We have already determined that Mr. Ball's misconduct was intentional and that it caused actual and potential harm to his clients. Furthermore, complete restitution is the only adequate remedy in this case. To permit Mr. Ball to retain any of the proceeds of his unethical conduct would send a chilling message to the public and, because of the amount of money involved, would be an incentive for other lawyers to engage in similar conduct. *See, e.g. Cheung v. Pena,* 143 Idaho 30, 137 P.3d 417 (Idaho, 2006) (total forfeiture of attorney fees); *King v. White,* 265 Kan. 627, 962 P.2d 475 (1998) (same); *Rice v. Perl,* 320 N.W.2d 407 (Minn.1982) (same); *Hartford v. Young,* 239 Mont. 527, 782 P.2d 365 (1989) (same); *In re Estate of Fraelich,* 2004 WL 1921998 (Ohio App. 11 Dist.) (same).

■■■■ **(3) Annulment.** This Court is also concerned by the Panel's recommendation that Mr. Ball's law license remain on inactive status for five years. We cannot accept such a recommendation. The conduct engaged in by Mr. Ball allowed him to obtain vast sums of money and property from his clients that he was not entitled to receive. Although Mr. Ball's conduct did not technically constitute misappropriation of clients' funds, the practical effect of his conduct was no different from that of misappropriation.

*See Lawyer Disciplinary Bd. v. Kupec,* 202 W.Va. 556, 561, 505 S.E.2d 619, 631 (1998) ("Most courts proceed from the general rule that absent compelling extenuating circumstances, misappropriation ... by a lawyer of funds entrusted to his/her care warrants disbarment."); Syl. pt. 5, *Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 240 S.E.2d 668 (1977) ("Detaining money collected in a professional or fiduciary capacity without bona fide claim coupled with acts of dishonesty, fraud, deceit or misrepresentation justify annulment of an attorney's license to practice law."). Thus, while different labels may be attached to greed—theft, misappropriation, misrepresentation, fraud, conversion—in disciplinary proceedings this Court is duty bound to look beyond labels and examine the effects of unethical conduct. The effect of Mr. Ball's conduct resulted in his improperly receiving funds and property from his clients. As pointed out by the decision in *Matter of Discipline of Babilis,* 951 P.2d 207 (Utah 1997),

[improperly taking] a client's funds is always indefensible; it strikes at the very foundation of the trust and honesty that are indispensable to the functioning of the attorney-client relationship and, indeed, to the functioning of the legal profession itself. The honesty and loyalty that all lawyers owe their clients are irrevocably shattered by an intentional act of [improperly taking a client's funds], and the corrosive effect of such acts tends to undermine the foundations of the profession and the public confidence that is essential to the functioning of our legal system. Lawyers should be on notice that an intentional act of [improperly taking] a client's funds is an act that merits disbarment.

*Babilis,* 951 P.2d at 217 (citations omitted). *See also Florida Bar v. Tunsil,* 503 So.2d 1230, 1231 (Fla.1986) ("In the hierarchy of offenses for which lawyers may be disciplined, [improperly taking funds] from a client must be among those at the very top of the list."). The egregious conduct by Mr. Ball demands that his license to practice law be annulled.

## IV.

### CONCLUSION

We reject the Panel's recommendation and impose the following sanctions upon Mr. Ball: (1) Mr. Ball's license to practice law in the State of West Virginia is annulled; (2) he is ordered to make restitution of all funds he received as executor of the Estate of Ms. Michael, which shall not be less than $785,996.00; (3) he is ordered to make restitution of all funds he received as executor of the Estate of Ms. Davis, which shall not be less than $837,362.00; (4) he is ordered to make restitution of all funds he received as trustee for the trust established for Ms. Davis, which shall not be less than $318,933.00; (5) he is ordered to make restitution of the value of the property received by him and his wife from the Estates of Ms. Michael and Ms. Davis, which shall not be less than $64,300.00; (6) he is ordered to make restitution of the full amount of the funds paid to his sons as beneficiaries of Ms. Davis' annuity, which shall not be less than $487,783.13; (7) he is ordered to make restitution of all monies he received for overseeing the funds bequeathed to WVU Foundation by Ms. Michael and Ms. Davis, which shall not be less than $336,889.61; (8) he is ordered to forego any further oversight of the funds donated to the WVU Foundation under the Estates of Ms. Michael and Ms. Davis; (9) the provision in Ms. Davis' Codicil drafted by Mr. Ball naming his wife, law partner and an unnamed lawyer as potential executors of Ms. Davis' estate and overseers of her bequeath to the WVU Foundation is void; (10) Mr. Ball is ordered to make restitution of all funds he received as executor of the Estate of Mr. Elmore; (11) he is ordered to make restitution of all monies, if any, he received for overseeing the funds bequeathed to WVU Foundation by Mr. Elmore; (12) he is ordered to forego any further oversight of the funds donated to the WVU Foundation under the Elmore Estate; (13) all funds required to be paid as restitution herein bear interest at the rate of 10% from the date the mandate for this opinion is issued; (14) Mr.

Ball shall pay to the ODC the costs it incurred in this proceeding.

This case is remanded to the Panel for a determination of the exact amount of money Mr. Ball must make as restitution to the Estates of Ms. Michael, Ms. Davis and Mr. Elmore.[25] This Court is further ordering that a copy of this opinion be filed with the Chief Judge of the Circuit Court of Monongalia County, for the purpose of having the circuit court appoint an administrator for the Estates of Ms. Michael, Ms. Davis and Mr. Elmore. The court shall limit the administrator's authority to that of collecting the restitution ordered in this opinion for the Estates of Ms. Michael, Ms. Davis and Mr. Elmore and to disburse the same to WVU Foundation as provided for in the residuary clause of each will. The administrator shall take part in the proceeding to determine the amount of restitution Mr. Ball must make and shall be entitled to recover a reasonable fee, to be set by the Circuit Court of Monongalia County, as administrator of the Estates of Ms. Michael, Ms. Davis and Mr. Elmore.

License to practice law in West Virginia annulled and other sanctions.

---

**25.** The Panel shall convene and conclude the remand hearing within sixty days from the date

this opinion is filed.